STUART, Justice.
The Water Works and Sewer Board of the City of Prichard (“the Prichard Water Board”) appeals the summary judgment entered against it by the Mobile Circuit Court in its action seeking declaratory and injunctive relief against the Board of Water and Sewer Commissioners of the City of Mobile d/b/a Mobile Area Water and Sewer Service System (“the Mobile Water Board”) with regard to the Mobile Water Board’s planned takeover of the water and sewer systems currently being operated by the Prichard Water Board. We reverse and remand.
I.
On June 9, 2011, during its 2011 Regular Session, the Alabama Legislature (“the legislature”) approved and adopted Act No. 2011-543, which provides as follows:
“Section 1. The following amendment to the Constitution of Alabama of 1901, as amended, is proposed and shall become valid as a part thereof when approved by a majority of the qualified electors voting thereon and in accordance with Sections 284, 285, and 287 of the Constitution of Alabama of 1901, as amended:
“PROPOSED AMENDMENT
“(a) Within 90 days after the ratification of this amendment, the assets and liabilities of the Water Works and Sewer Board of the City of Prichard shall be transferred to the Board of Water and Sewer Commissioners of the City of Mobile, presently known as the Mobile Area Water and Sewer System. The transfer shall include all assets of the Water Works and Sewer Board of the City of Prichard and shall be conditioned upon the assumption or discharge by the Board of Water and Sewer Commissioners of the City of Mobile, presently known as the Mobile Area Water and Sewer System, of all liabilities of the Water Works and Sewer Board of the City of Prichard, including, without limitation, all indebtedness, contracts, and retirement obligations. Any assumption of obligations by the Board of Water and Sewer Commissioners of the City of Mobile, presently known as the Mobile Area Water and Sewer System, shall be evidenced by resolution of that board.
“(b) Upon transfer of its assets and liabilities pursuant to subsection (a), the Water Works and Sewer Board of the City of Prichard shall be dissolved.
“(c) The rates for water and sewer service to existing customers of Mobile Area Water and Sewer System shall not be increased at any time for reasons related to the acquisition or maintenance of the assets, liabilities, or infrastructure of the Water Works and Sewer Board of the City of Prichard.
“(d) Notwithstanding ratification of this amendment in accordance with applicable state law, this amendment shall not be effective and the actions, including, but not limited to, the transfer of assets and liabilities in subsections (a) and (b), shall not take place unless both of the following have occurred:
“(1) A favorable vote by the majority of those persons who reside and voted in precincts any part of which are serviced by the Board of Water and Sewer Commissioners of the City of Mobile (Mobile Area Water and Sewer System).
“(2) A favorable vote by the majority of those persons who reside and voted in *960 precincts any part of which are serviced by the Water and Sewer Board of the City of Prichard. The votes cast on this amendment in precincts any part of which are serviced by the Board of Water and Sewer Commissioners of the City of Mobile (Mobile Area Water and Sewer System) and the votes cast on this amendment in precincts any part of which are serviced by the Water and Sewer Board of the City of Prichard shall be tabulated separately to determine whether a majority of those who voted in each area approved the amendment.
“Section 2. An election upon the proposed amendment shall be held in accordance with Sections 284 and 285 of the Constitution of Alabama of 1901, now appearing as Sections 284 and 285 of the Official Recompilation of the Constitution of Alabama of 1901, as amended, and the election laws of this state.
“Section 8. The appropriate election official shall assign a ballot number for the proposed constitutional amendment on the 'election ballot and shall set forth the following description of the substance or subject matter of the proposed constitutional amendment:
“ ‘Proposing an amendment to the Constitution of Alabama of 1901, to provide for the transfer of the assets and liabilities of the Water Works and Sewer Board of the City of Prichard to the Board of Water and Sewer Commissioners of the City of Mobile, presently known as the Mobile Area Water and Sewer System.
“ ‘Proposed by Act-’
“This description shall be followed by the following language:
“ ‘Yes () No ().’ ”
The proposed amendment was included on the ballot for the general election held November 6, 2012, as amendment 5. A majority of voters statewide, a majority of voters served by the Prichard Water Board, and a majority of voters served by the Mobile Water Board all voted in favor of the proposed amendment, and it was apparently subsequently renumbered Amendment No. 863. On January 28, 2013, the Mobile Water Board adopted a resolution authorizing the assumption of all assets and liabilities belonging to the Prichard Water Board.
On November 29, 2012, the Prichard Water Board sued the Mobile Water Board, seeking a judgment declaring Amendment No. 863 invalid and void, as well as an injunction enjoining the Mobile Water Board from taking any action to take over the Prichard Water Board’s water and sewer systems or to dissolve the Prichard Water Board. The Mobile Water Board moved to dismiss the complaint, and the trial court subsequently ordered both parties to submit summary-judgment motions outlining their positions. The parties filed the requested summary-judgment motions on January 25, 2013. In its motion, the Prichard Water Board argued, among other things, that Amendment No. 863 was invalid because the proper procedure for proposing an amendment to the Constitution was not followed; specifically, the Prichard Water Board argued that the legislature had erred by following the procedure set forth in Ala. Const.1901, Art. XVIII, § 284, which outlines the general procedure for proposing an amendment to the Constitution and provides:
“Amendments may be proposed to this Constitution by the legislature in the manner following: The proposed amendments shall be read in the house in which they originate on three several days, and, if upon the third reading three-fifths of all the members elected to that house shall vote in favor thereof, the proposed amendments shall be sent *961 to the other house, in which they shall likewise be read on three several days, and if upon the third reading three-fifths of all of the members elected to that house shall vote in favor of the proposed amendments, the legislature shall order an election by the qualified electors of the state upon such proposed amendments, to be held either at the general election next succeeding the session of the legislature at which the amendments are proposed or upon another day appointed by the legislature, not less than three months after the final adjournment of the session of the legislature at which the amendments were proposed. Notice of such election, together with the proposed amendments, shall be given by proclamation of the governor, which shall be published in every county in such manner as the legislature shall direct, for at least four successive weeks next preceding the day appointed for such election. On the day so appointed an election shall be held for the vote of the qualified electors of the state upon the proposed amendments. If such election be held on the day of the general election, the officers of such general election shall open a poll for the vote of the qualified electors upon the proposed amendments; if it be held on a day other than that of the general election, officers for such election shall be appointed; and the election shall be held in all things in accordance with the law governing general elections. In all elections upon such proposed amendments, the votes cast thereat shall be canvassed, tabulated and returns thereof be made to the secretary of state, and counted, in the same manner as in elections for representatives in the legislature; and if it shall thereupon appear that a majority of the qualified electors who voted at such election upon the proposed amendments voted in favor of the same, such amendments shall be valid to all intents and purposes as parts of this Constitution. The result of such election shall be made known by proclamation of the governor. Representation in the legislature shall be based upon population, and such basis of representation shall not be changed by constitutional amendments.”
The Prichard Water Board argued that the legislature should instead have followed the procedure set forth in Ala. Const. 1901, Art. XVIII, § 284.01, which relates to constitutional amendments affecting only one county and provides as follows:
“(a) Any proposed constitutional amendment which affects or applies to only one county shall be adopted as a valid part of the constitution by a favorable vote of a majority of the qualified electors of the affected county who vote on the amendment. Any proposed constitutional amendment which affects or applies to only one political subdivision within a county or counties shall be adopted as a valid part of the constitution by a favorable vote of a majority of the qualified electors of both the county and the political subdivision affected by the amendment who vote on the amendment. The proposed amendment may provide for a separate referendum in a political subdivision of less than a county if a simultaneous referendum is not possible because of conflicting voting precincts.
“(b) The proposed amendment shall first be approved by at least a three-fifths vote of the elected members of each house of the Legislature with no dissenting vote east and approved by a majority vote of the Local Constitutional Amendment Commission. The commission shall be composed of the Governor, Presiding Officer of the Senate, Attorney General, Secretary of State, and *962 Speaker of the House of Representatives. The Legislature may by general act specify procedures for the Local Constitution Amendment Commission, but may not expand its role beyond deciding whether the amendment affects more than one county or more than one political subdivision in one or more counties.
“(c) Notice of the election, together with the proposed amendment, shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in each newspaper qualified to run legal notices in the county or counties affected.
“(d) In the event any constitutional amendment proposed for adoption pursuant to this amendment is approved by at least a three-fifths vote of the elected members of each house of the Legislature but with one or more dissenting votes cast, the amendment shall be treated as a statewide amendment as described in subsection (e).
“(e) If after having been approved by at least a three-fifths vote of the elected members of each house of the Legislature without a dissenting vote cast the proposed amendment is not approved by a majority vote the Local Constitutional Amendment Commission, it shall automatically be submitted in a statewide referendum in accordance with the procedures for proposed statewide constitutional amendments under Sections 284 and 285 of the Constitution of Alabama of 1901. If the proposed amendment is submitted in a statewide referendum, it shall not become effective unless approved at a referendum by a majority of the qualified voters of the affected county voting on the proposition and the affected political subdivision voting on the proposition, if it affects less than the whole county. The referendum in a political subdivision may be held at the same time as the election for the ratification of the proposed amendment, or at another time if provided by the proposed amendment.
“(f) Notwithstanding any provision of the Constitution of Alabama of 1901, to the contrary, all constitutional amendments which have been adopted by a majority vote of the appropriate electorate pursuant to [this section as added by] Amendment No. 425 to the Constitution of Alabama of 1901, are hereby ratified and confirmed.”
The Prichard Water Board argued that Amendment No. 863 affected only Mobile County and that the legislature accordingly should have followed the procedure in § 284.01. In its motion, the Mobile Water Board acknowledged that Amendment No. 863 affected only Mobile County, but it argued that the legislature was nevertheless free to follow the procedure in either § 284 or in § 284.01.
On February 19, 2013, the trial court entered a summary judgment in favor of the Mobile Water Board and against the Prichard Water Board, holding that Amendment No. 863 was properly enacted and dissolving the Prichard Water Board and transferring its assets and obligations to the Mobile Water Board. On February 27, 2013, the Prichard Water Board filed its notice of appeal to this Court.[1]
*963 II.
The Prichard Water Board argues that the trial court erred by entering a summary judgment in favor of the Mobile Water Board. We review this argument pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
The Prichard Water Board argues that the summary judgment in favor of the Mobile Water Board should be reversed for a variety of reasons; we first consider its argument that Amendment No. 863 is invalid because, it says, the proper procedure for proposing an amendment to the Constitution was not followed. In Hunt v. Decatur City Board of Education, 628 So.2d 393, 396-97 (Ala.1993), this Court stated:
“Our constitution contains two procedures, other than the convention procedure, Ala. Const.1901, Art. XVIII, §§ 286, 287, for amending the document. [Section 284] gives the general procedure for amending the constitution, and [§ 284.01] provides a limited procedure for proposing and adopting an amendment that applies to only one county.[2] These provisions are the exclusive means for amending the document, for the power to alter the constitution must be explicitly conferred in the instrument itself. State v. Manley, 441 So.2d 864 (Ala.1983); Johnson v. Craft, 205 Ala. 386, 87 So. 375 (1921); Hooper v. State ex rel. Fox, 206 Ala. 371, 89 So. 593 (1921); Collier v. Frierson, 24 Ala. 100 (1854). For example, in Johnson and Hooper the legislature proposed amendments to the constitution that purported to confer upon the Governor the power to call statewide elections for the amendments. Although there was no express provision in the constitution prohibiting the legislature from delegating this power to the Governor, this Court held that the purported amendments were invalid because § 284 provided that only the legislature has the power to order the statewide elections. This Court refused to recognize an implied or supplementa *964 ry power on the part of the Governor in the amendment process.
“An important corollary to the rule that any power in the amendment process must be expressly conferred is that the prescribed amendment procedures must be strictly followed and that any deviation from the procedure renders the proposed amendment a nullity. This rule applies notwithstanding a vote by the electorate in favor of the amendment. Johnson, Collier, supra. The fundamental law must necessarily be immune to unauthorized change by any of the coordinate branches of government. In Collier, supra, this Court stated:
“ ‘The constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be done— certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. To do so, would be to violate the instrument which they are sworn to support.... ’
“24 Ala. at 109.”
Thus, Hunt makes it clear that “the prescribed amendment procedures must be strictly followed and ... any deviation from the procedure renders the proposed amendment a nullity.” 628 So.2d at 396. We must accordingly determine whether the legislature erred by proposing Amendment No. 863 pursuant to § 284 instead of § 284.01.
Section 284.01(b) provides that a proposed amendment affecting only one county “shall first be approved by at least a three-fifths vote of the elected members of each house of the Legislature with no dissenting vote cast and approved by a majority vote of the Local Constitutional Amendment Commission.” (Emphasis added.) We have previously stated that “[t]he word ‘shall’ is clear and unambiguous and is imperative and mandatory.” Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998). In the instant case, we may take judicial notice of the fact that Act No. 2011-543, proposing Amendment No. 863, was approved by the Senate 23-0 and by the House 66-0.[3] Nevertheless, Amendment No. 863 was never submitted to the Local Constitutional Amendment Commission for approval, despite the clear indication in § 284.01 that such a submission is necessary when the legislature unanimously approves a proposed amendment affecting only one county by the prescribed margin.[4] Thus, *965 it is clear that the procedure for proposing Amendment No. 863 provided by § 284.01 was not followed. Indeed, the Mobile Water Board does not even take the contrary position; rather, it argues that § 284.01 merely provides an alternative path for proposing an amendment affecting only one county and that the legislature is free to follow the procedure set forth in § 284 instead should it desire to do so when proposing a constitutional amendment affecting only one county. We disagree.
In Opinion of the Justices No. 329, 568 So.2d 1216 (Ala.1989), this Court considered a question posed by the House of Representatives regarding whether the provisions of § 284 or § 284.01 (then Amendment No. 425) applied to a proposed amendment affecting only Calhoun County. We stated that § 284.01 “changed the method of approving or disapproving an amendment to the Constitution where only one county is affected by the amendment,” 568 So.2d at 1219 (emphasis added), and that § 284.01 “controls the election where a proposed Constitutional amendment affects only one county,” 568 So.2d at 1218 (emphasis added). The use of the term “changed” indicates that the prior method for approving an amendment affecting only one county was no longer available, and the use of the term “controls” further indicates that § 284.01 is, post-adoption, the exclusive avenue for proposing such an amendment. The Mobile Water Board rightly notes that advisory opinions issued by this Court are not binding precedent, see, e.g., Opinion of the Justices No. 384, 49 So.3d 1181, 1186 (Ala.2010); however, in light of the previously noted mandatory language in § 284.01, we agree with the conclusion reached in this Court’s 1989 advisory opinion that the procedure set forth in § 284.01 must be followed in proposing amendments affecting only one county.
We recognize that our holding today is in conflict with two advisory opinions issued by the Alabama Attorney General and cited by the Mobile Water Board in support of its arguments. Although this Court is not bound by opinions of the attorney general, it has recognized that such opinions often constitute persuasive authority; accordingly, we think it wise to explain further our rationale for rejecting in this case the reasoning expressed in those opinions. See Alabama-Tennessee Natural Gas Co. v. Southern Natural Gas Co., 694 So.2d 1344, 1346 (Ala.1997) (“While an opinion of the attorney general is not binding, it can constitute persuasive authority.”). In Op. Att’y Gen. No. 84-00098 (Dec. 15, 1983), the attorney general issued an advisory opinion to the probate judge of Randolph County regarding an amendment affecting only Randolph County that the legislature had approved pursuant to § 284 as opposed to § 284.01, which at that time required proposed amendments affecting only one county to be unanimously approved by the Local Constitutional Amendment Commission and did not contain current subsections (d) and (e).[5] In concluding that the legislature *966 could elect to follow either the procedures of § 284 or § 284.01 when proposing a constitutional amendment affecting only-one county, the attorney general stated:
“It is obvious that the constitutional amendment proposed by Act 83^54 is a local amendment and therefore would not be required to be voted on statewide absent the specific language contained therein excepting it from the provisions of [§ 284.01]. Therefore, the question to be determined becomes whether [§ 284.01] was intended by the Legislature to be the exclusive method by which a proposed constitutional amendment affecting only one county may be adopted. If it is the exclusive method, then the language contained in Act No. 83-454 that attempts to exclude it from the operation of [§ 284.01] is invalid, inasmuch as it would in that case constitute a statutory provision which conflicts with a constitutional provision. Although a constitutional amendment normally may exclude itself from other constitutional provisions, it cannot exclude itself from the provisions regarding the steps necessary for it to become a valid constitutional amendment. A constitutional provision validly enacted under the procedures presently required by the constitution and containing language changing said procedures would be necessary in order to change the procedures by which amendments may be adopted for subsequently proposed amendments.
“It is highly unlikely that the Legislature intended to give the Governor, Lieutenant Governor, Attorney General, Secretary of State, and Speaker of the House of Representatives, individually, veto power over any proposed local constitutional amendment. If [§ 284.01] is read to be the exclusive method by which to adopt local amendments to the Constitution, such a veto power would appear to vest in each of the above-named officials. The more reasonable interpretation would be that [§ 284.01] was intended as a non-exclusive method of avoiding a state-wide vote on purely local matters, but that if a local amendment for some reason is not approved pursuant to [§ 284.01], it may still be approved and adopted in the manner followed previous to the adoption of [§ 284.01],
“It is therefore the opinion of this office that the Legislature did not intend [§ 284.01] to be the exclusive means by which a proposed constitutional amendment affecting only one county may be adopted.”
In a later opinion, Op. Att’y Gen. No. 98-00196 (Aug. 11, 1998), the attorney general responded to a similar inquiry regarding a proposed constitutional amendment affecting only Bibb County and again concluded, based on its previous advisory opinion, that the legislature could elect to follow the procedure of either § 284 or § 284.01 when proposing a constitutional amendment affecting only one county. The only rationale offered in either advisory opinion in support of the conclusion that either § 284 or § 284.01 could be employed to propose an amendment to the constitution that affected only one county was the fact that the contrary conclusion would essentially give the individual members of the *967 Local Constitutional Amendment Commission veto power over the proposed amendment.
However, on November 8, 1994, Amendment No. 555 was ratified, amending § 284.01 to its current form, which requires only a majority of the Local Constitutional Amendment Commission to approve a proposed amendment, and further providing, in subsections (d) and (e), procedures by which a proposed amendment could still be submitted to the voters for approval even if approval by the Local Constitutional Amendment Commission or a unanimous vote in either chamber of the legislature is not obtained. Thus, the only rationale offered in the two cited advisory opinions issued by the attorney general for the conclusion that the legislature could proceed in such a case under § 284 or § 284.01 no longer holds, and we are left with only the mandatory language of § 284.01 setting forth the proper procedure to follow when “[a]ny proposed constitutional amendment ... affects or applies to only one county.”[6] § 284.01(a). It is notable, furthermore, that the legislature, in proposing Amendment No. 555 to amend § 284.01 after this Court’s decision in Hunt, did not include language indicating that § 284.01 was merely an alternative path it could elect to follow to propose a constitutional amendment affecting only one county. Rather, the legislature amended the language to remove the apparent veto power that had been given to the Local Constitutional Amendment Commission and to further provide a specific avenue for passing a proposed amendment even when commission approval or unanimous legislature approval was not obtained. However, the mandatory language, i.e., the use of the mandate “shall,” remained.
IV.
The Prichard Water Board appeals the summary judgment entered against it by the trial court holding that Amendment No. 868 was properly proposed and ratified pursuant to § 284. That judgment is now reversed. Because Amendment No. 863 affects only Mobile County, the legislature should have followed the procedure in § 284.01 instead of the procedure in § 284, and that noncompliance with § 284.01 invalidates Amendment No. 863 in spite of any compliance with § 284. See Hunt, 628 So.2d at 396 (“[T]he prescribed amendment procedures must be strictly followed and ... any deviation from the procedure renders the proposed amendment a nullity.”). We accordingly preter-mit discussion of all other arguments raised by the parties, and we remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and BOLIN, PARKER, and MAIN, JJ., concur.
SHAW, J., concurs specially.
*968 MURDOCK, J., concurs in the result.
WISE and BRYAN, JJ., dissent.

. Following die trial court’s entry of a summary judgment in favor of the Mobile Water Board, the Prichard Water Board moved for a temporary injunction pending appeal. The Mobile Water Board opposed the motion, and, on February 22, 2013, the trial court granted the motion in part, allowing the Mobile Water Board to take over the day-to-day operations of the Prichard Water Board but allowing the Prichard Water Board to retain *963 its corporate existence in order to facilitate an appeal and prohibiting the Mobile Water Board from making any permanent or irreversible interconnections between the two water and sewer systems until the anticipated appeal was resolved

. In Hunt, this Court at times referred to § 284 and § 284.01 as Amendment No. 24 and Amendment No. 425, respectively. When the Code was recompiled, they were renumbered as § 284 and § 284.01. For consistency, we re^er 1:0 them solely as § 284 and § 284.01 throughout this opinion.

. See, e.g., Johnson v. Hall, 10 So.3d 1031, 1034 (Ala.Civ.App.2008) (stating that "court may take judicial notice of public records"), and Hutcheson v. Gonzales, 41 N.M. 474, 71 P.2d 140, 141 (1937) (stating that "we take judicial notice, that by chapter 117 of the Laws of 1937, the Legislature by unanimous vote of each house thereof, 22 senators voting in the affirmative, nays none, 2 senators being absent, and 34 members of the House voting in the affirmative, none in the negative, the others being absent, called a special election to be held throughout the state” to approve or reject proposed amendments to the New Mexico Constitution).

. In the event a proposed amendment is approved by the legislature in a three-fifths vote that is not unanimous, or if the Local Constitutional Amendment Commission fails to approve the amendment by a majority vote, § 284.01(d) and (e) provide that the proposed amendment "shall automatically be submitted in a statewide referendum in accordance with the procedures for proposed statewide constitutional amendments under Sections 284 and 285 of the Constitution of Alabama of 1901.” § 284.01(e). However, nothing indicates that the legislature may elect simply to bypass the Local Constitutional Amendment Commission entirely.

. Section 284.01 at that time read as follows:
"Any proposed constitutional amendment which affects or applies to only one county shall be adopted as a valid part of the constitution by a majority vote of the people of the county and in any political subdivision thereof so affected, provided that such proposed amendment has first been unanimously approved by at least a three-fifths vote of the elected members of each house and unanimously approved by a local constitutional amendment commission composed of the governor, lieutenant governor, attorney general, secretary of state and speaker of the house of representatives and notice of such election, together with the proposed amendment shall be given by proclamation of the governor, which proclamation shall be published once a week for four successive weeks next preceding the *966 day appointed for the election in each newspaper qualified to run legal notices in the county affected. The proposed local constitutional amendment shall then be approved by a majority vote of the qualified electors of the county and in any political subdivision thereof affected by such proposed amendment voting in a referendum election held for the purpose of determining if such proposed amendment shall become adopted as a valid part of the Constitution.”

. We further note that this Court in Hunt previously rejected the rationale put forth by the attorney general in his 1983 advisory opinion, holding that the plain language of § 284.01 controlled:
"The [Local Constitutional Amendment] Commission also argues that the effect of a failure by it to unanimously approve a proposed amendment for submission to a vote in a single county is that the amendment will be submitted to a vote of the entire state. It seizes upon the language in the attorney general's opinion questioning whether the legislature intended to give a single member of the Commission veto power over proposed local amendments. However, [§ 284.01] clearly compels exactly this result.”
628 So.2d at 397.